The next case today is Performance Trans., Inc. v. General Star Indemnity Company, Appeal No. 201022. Attorney Ahmed, please proceed. Thank you. Good morning. May it please the Court, Sid Ahmed for Utica Mutual Insurance Company, one of the appellants here. Your Honors, may I reserve three minutes for rebuttal? Yes, you may. Thank you. This Court should reverse the decision below because it relied on a categorical rule about exceptions to exclusions not affirmatively creating coverage. We believe that categorical rule is contrary to Massachusetts law, as I'll explain. The policyholder in this insurance dispute is a transportation company called Performance. It hauls various commodities, including petroleum, such as gasoline and diesel fuels. There was an accident in February of last year when one of Performance's tanker trucks overturned in North Salem, New York. That accident resulted in gasoline and diesel spilling into the roadway and the adjacent reservoir. The damage from that has been ongoing. The question here is whether there's coverage for those amounts under General Star's excess policy, and that question hinges on two particular provisions. The first one is what we refer to as the overturned auto clause. The second one is the total pollution exclusion. We believe the overturned auto clause, when read properly and construing the policy as a whole, provides coverage, and we believe the total pollution exclusion does not take away that coverage. Let's start with the overturned auto clause, which is on page 45 of the appendix. The clause is found in a rider to the policy. It's an endorsement, and it's titled Special Hazards and Fluids Limitation Endorsement. There's no dispute that General Star prepared the endorsement. It excludes coverage for certain types of special hazards, but there are four exceptions referenced in the rider. One of those is for fuels that are spilled because of an overturned auto. That's paragraph two. That's the overturned auto clause, and the parties agree that clause applies to this accident. The question really is what the ramifications of it are. In that respect, we believe there are two issues. The first one is, is it impossible for exceptions to exclusions to provide coverage regardless of what they say, regardless of how the policy is structured? We believe that's what the district court found, and that was an error. The second question is, if it's possible for language in a rider like this one to provide coverage, does this particular provision actually do that, and the district court did not reach that issue? Let's start with the first. Isn't there a middle ground here that I'm not sure the district court, in fact, didn't follow, which is that when you read an insurance policy and you want to know what's covered, you generally read the main body of the policy, and then you read any endorsements that add coverage. If you want to know what's excluded from the potentially broad language of that coverage, you go and you look at the exclusions and limitations. That's how you read a policy generally. If we get to an exclusion, and it says A is excluded, but then it carves out an exception to that exclusion, we generally don't think of that as a grant of coverage. That's how I read the district court's rationale. Your Honor, that may well have been the rationale. That's not what the opinion states. It has a sentence which says, exceptions to exclusions do not provide coverage, period. There may well be a middle ground, and in fact, we think that in fact is the appropriate rule under Massachusetts law, and there is no such categorical bar to exceptions creating coverage, and you have to look at it in context. In context, why wouldn't that presumption be a bar to you? Because this says this exclusion, the document itself, the endorsement, refers to itself as an exclusion, and the exclusion says the policy doesn't apply to or does not apply to an upset or overturned auto. How do you get out of that a grant of coverage? That's what I'm finding difficulty with and the district court found difficulty with. Sure, and let me address that. I think there are several reasons. Number one, you have to look at the policy as a whole and not just that specific language. There are more than a dozen riders like this one, and 15 of them have in the title the word exclusion, and if you look at each of those 15, all those riders do is exclude coverage. They don't in fact provide any. This particular endorsement does not have the word exclusion in the title. Number two, if you look at the text of the actual endorsement, there are other reasons why an objectively reasonable reading of this would indicate this is not an ordinary exclusion with just exceptions. Instead, some of the exceptions, the exceptions can provide coverage. So take a look at paragraph four. Paragraph four says that coverage under this item four, which is for a short-term drilling fluid event, will be available. So the endorsement in this exception says coverage will be available, and that we think is a signal that the endorsement is providing coverage independent of other clauses and the insuring agreement in the main body of the form, similar to the East Hampton case, which had a similar setup where there was an exception, where there was an exclusion for collapse, but there was a carve-out. I see that point, but I think the response, and so perhaps you could direct your attention to it, is that doesn't a negative inference arise that four, if we accept your reading, that four actually provides some coverage as opposed to provides a carve-out? It only referring to coverage under this item four, isn't there a negative inference then that one, two, and three have no such language? We don't believe so, Your Honor, and that's because the reason you have the language in four is because the coverage provided under subparagraph four has some limitations, and what this language is specifying is what those limitations are. In contrast, subparagraphs one, two, and three are not subject to any such express limitations. That's why you don't need to say coverage is available, but only for x, y, and z, because one, two, and three are not subject to those limitations. The other point I would make, Your Honor, when you're looking at this and as a whole, you also have to look at how other exceptions to exclusions have been considered and what General Starr says about them, and if you turn back to appendix 42, this is the terrorism exclusion. If the rule was that you cannot have coverage being created under any scenario from exceptions to exclusions, there would be no reason for General Starr in appendix 42 in this separate rider to say that if that exclusion does not apply, those exceptions quote, do not serve to create coverage that is otherwise excluded. Counsel, if I may, you presented two different arguments to us. One is as a matter of law, Massachusetts does not say that all exclusions must be read as not being a source of coverage, but then you make an independent argument, which is that if you look at this particular policy language, there is at least ambiguity, and under Massachusetts law, if there is at least ambiguity, it is read against the insurer and there may be issues as to which evidence is required. As I understand your second argument, it starts with the premise that when they wanted something to be an exclusion, they knew how to state it as an exclusion. They did not state this as an exclusion. They stated this as an endorsement. Endorsements can add to coverage or they can take away from coverage. That's pretty basic insurance law. You say they read too much into the term limitations in the endorsement. You then go down and you look at the auto clause and we've heard your arguments about that. So again, my question goes to what is the remedy that you are seeking? I had understood that you were not seeking entry of judgment in your favor, although perhaps you are, but that you were seeking a remand on grounds of ambiguity and then whatever happens happens thereafter. I agree with all of that. The only caveat I would put in, we're seeking both alternatives. If the court agrees that without resort to extrinsic evidence because the ambiguity is construed in favor of coverage and for the other reasons set forth in the brief, as a matter of law, there is coverage, there would not be a need for further proceedings to make that determination. Alternatively, you're correct, Your Honor. We are saying at a minimum, the grant to summary judgment in General Starr's favor was erroneous because of additional proceedings that would be needed if the court agrees with that alternative ground. Thank you for clarifying, but your opponent has raised an argument that if they can put on evidence both about custom and usage and evidence that your client could well have paid a little more and bought a policy which clearly provided this coverage and you chose not to do so. So your opponent says even if there is a thought to be ambiguity on the face of the insurance policy, we're still entitled to a trial on it. What's your response to that? Your Honor, we believe if you look at the extrinsic evidence, which was not fully developed in the proceedings below, but even if you look at the snippet General Starr submitted, even if you look at the snippet submitted by General Starr, it does not entitle them to a trial. What they have is not a statement from their policy. Excuse me, counsel. I did not phrase it as judgment as a matter of law. I phrased it as it goes back for further review on the question of ambiguity and whether there is any other evidence that could be permissibly introduced on the question of ambiguity. And you've just said the record was not fully developed on that issue because the district court didn't think it was necessary to allow the development of that record. Your Honor, I apologize. I misunderstood your statement. I agree that if there's an ambiguity finding and we need to look at the extrinsic evidence to fully look at that record based on what the court does, we would need further questions. I'll save the remainder for my rebuttal. Thank you. Thank you. Good morning, Your Honors. May it please the court, my name is Kara Duffield and I represent the APOE General Starr Indemnity Company. No insured could have an objectively reasonable expectation of coverage for environmental cleanup in light of the total pollution exclusion that is a part of this policy. The pollution exclusion is unambiguous and Utica does not contend otherwise. And the claim here, which is cleanup costs for oil spilled into a drinking water reservoir, is directly at the heart of what the pollution exclusion excludes. PTI and Utica are trying to create coverage for this accident by looking at a separate provision, the special hazards endorsement. That the special hazards endorsement is an exclusion with an exception and relevant here the exception for upset and overturn of an auto. How do you address their most powerful point which goes to C4 and refers to coverage under this item 4 will be with a caveat than 1, 2, and 3 can create coverage without that caveat. So I would respond to that in a couple of ways. The first one is substantive and one is sort of textual. The substantive point is that again we are looking at the touchstone of what an objectively reasonable insured would think. Does this policy provide coverage for pollution cleanup or does not? And if you look at subsection 4 it almost precisely addresses those circumstances by saying yes there is this exclusion for but guess what there's no coverage for pollution of a body of water. So I would say that any objectively reasonable insured looking at subsection 4 would not have some view that suddenly this policy creates coverage for pollution. Well what let me pause you on that because I see what you're saying. What do you say the words coverage under this item 4 will be available? What do those words mean? Yes so this so I want to address directly what you're asking but I think this gets back to the larger point Mr. Ahmed started with about there being a so-called general rule that exceptions that exclusions cannot create coverage. I think that this is a fairly complex endorsement and the insurer is trying to in the most direct way explain what the contours of this exception to the exclusion are. I would disagree with Mr. Ahmed that the question is whether a this is you know a situation where an exclusion can ever create coverage or not. Let me pause you again. I'll let you go back to this but I'm not sure I may have misunderstood. I don't think I heard an answer to my question. What do the words coverage under this item 4 will be under item 4? So I would answer your question this way which is that even an exception to an exclusion allows for coverage. The question is whether that's an independent coverage grant or whether it is simply a limitation on the scope of the exclusion and I think that's the heart of what this case is about. So with respect directly to your question about item 4 again what the insurer is trying to do is identify with respect to a short-term drilling fluid event which is an exception to the general exclusion for special hazards what coverage is going to be left and what coverage is going to be taken away. What that doesn't mean is that that is somehow an affirmative additional insuring agreement in addition to the insuring agreement of the policy and this is the reason why Massachusetts and first circuit law are so uniform in this context which is that if you have two exclusions and one of them applies and takes away coverage and you have a second exclusion that has some exceptions and the facts of the claim may fall within that exception it doesn't matter because the first exclusion still covers. What does C4 mean counsel? What does C4 mean? Your Honor, C4 is again referring to a short-term drilling fluid event which no one is contending is an issue with respect to this accident and it is simply saying that in some circumstances this exception will apply. So the exception... Does that mean when you say this exception will apply do you mean that there is coverage in certain instances? Correct, because the exception limits the operation of this exclusion but what it doesn't say is that this provision then overrides every other exclusion in the policy. So you're reading coverage to in effect mean provided that this exception from this exclusion under this item four will be available? Correct, 100 percent and that's exactly the long list of cases that we cited in our brief most notably this court's decision in Stolberg. This is also the other Massachusetts and First Circuit cases, Boazova, Donovan, Bond brothers in sketchy form and AGM hold that you basic point is that you read exclusions seriatim. You don't read... Why when 15 others are labeled as exclusions and you say this is an exclusion why would a objectively reasonable insured think that this was an exclusion although it's not labeled that way? Yes, your honor. So obviously you need to read the entire policy. The endorsement is called a limitation endorsement and that is... Yes, but none of the case law that discusses exclusion discusses limited endorsements, okay? And you are saying there is absolutely no ambiguity whatsoever about what the term limited endorsement means when within that endorsement there is at least one grant of coverage? So your honor, yes we say that there is no ambiguity because again the touchstone is what an objectively reasonable insured reading the entire policy would understand and I don't think that an objectively reasonable insured would delve four layers deep into one endorsement to think that there was coverage for pollution when there is a very unambiguous pollution exclusion in place and again hearkening back to the cases that we cited the principle is that you read exclusions one by one and if one applies even if another one doesn't as this court said in Stolberg if there's a glimmer of hope because for instance here the special hazards endorsement may not bar coverage the total pollution exclusion bars coverage. Counsel, when I asked your opponent the question about remedy he said first we would like the court to reverse and enter judgment in our favor that there is coverage but failing that and he relies on the rule that ambiguity is normally construed against the writer of the policy then his fallback position is failing that yes there would have to be a resolution of the question of whether extrinsic evidence may be admitted and the district court really didn't get into that. Do I take it that your fallback position if you don't get affirmance is that the matter should be remanded for consideration of whether extrinsic evidence may be introduced in light of any ambiguity? Yes your honor that is General Starr's position. Okay but on that point with a with a foreign policy standard foreign policy what type of extrinsic evidence are we going to find? So I would answer that by saying there was because both parties agreed that this coverage issue could be teed up on very limited admitted facts there really wasn't an exploration of that. I think that there would be potentially discovery into the underwriting of the policy the placement of the policy and that would be that is normally the type of extrinsic evidence that would play in this Is this endorsement a standard form endorsement? Is there any evidence on that? This endorsement was not specifically manuscripted for this policy. You didn't answer my question. Yes your honor it is a form endorsement it was not that is what I meant when I said it was not specifically manuscripted for this policy. Returning to the point about what an objectively reasonable insured would expect here we actually have very clear evidence of what this insured did. After General Starr denied coverage based on the pollution exclusion the insured filed a malpractice claim against its broker and that's the reason why Utica is in this case. Utica is the broker who placed this wasn't the insured that made these arguments about so-called coverage signals it was Utica that made these on appeal for the first time and I would say that if these coverage signals were so obvious as to override the total pollution exclusion then it's curious why these are being made for the first time on appeal. Again none of these coverage signal arguments were made in the district court. Your brother disagrees you're making a waiver argument and he says no we did not waive this argument and Utica as I understand it was assigned to all of the insurers claims. The insured's claims to pursue coverage against General Starr correct? Yes. So I will not dispute that below the question very much was is there coverage under the special unfolded was exactly the reason why the district court's opinion is as it is following Stolberg and the other line of cases which is that if you have an exception to an exclusion and you have a different exclusion that applies there's no coverage and I think Utica fully recognizes that that is consistent with Massachusetts and first circuit law and that is the reason why they have shifted their argument on appeal to say actually the special hazards endorsement is not an exclusion with an exception it is an affirmative coverage grant. There's no case that they have cited in contrast to the weight of cases we have cited that adopts some sort of theory about looking at coverage signals. There's not a single case that they have cited that would guide this court as to what kind of coverage signals make something an affirmative grant of coverage versus not. The one case they have cited is the East Hampton Church case but that doesn't help them because in that case the parties agreed that the additional coverage section applied. There was no need for the court to delve into what might or might not constitute an affirmative grant of coverage because the parties agreed that the additional coverage section was what was operative and that is the reason why we dealt with that case only in a footnote. Again the question about what an insurer might reasonably expect has to do with this question of an exception to an exclusion. An exception to an exclusion simply limits the scope of that exclusion. It doesn't say hey this exception affirmatively overrides every other exclusion there might be in the policy and again that's the cases that we have cited and that those are the cases. That is the case here where even if this accident might fall within the upset and overturn exception to the special hazards endorsement it doesn't have any impact on the pollution exclusion and UTIFA has offered a few types of canons of construction to suggest that somehow this exception in the special hazards endorsement overrides the pollution exclusion but for the reasons set forth in our brief none of those obtain and in fact in this court's decision in Stolberg it essentially addressed every single one of the arguments that PTI and UTIFA are raising here. The reasonable exceptions issue the specific versus general issue and the illusory coverage issue and the Stolberg case says even if you have two policy provisions which overlap in a large number of circumstances you still need them separately and if one of those provisions applies to bar coverage there's no coverage. Thank you your honors. Thank you. Your honor just a couple of quick points. With respect to this idea that the issues weren't raised below we've addressed that in our reply and the district judge like you had plenty of time to look at the agreement and in fact noted that he had looked at this endorsement till his eyes crossed. We don't think the issues were waived they were fully vetted below. Number two with regard to this idea of how this coverage grant would interact with other provisions East Hampton we think is the best case on this. That case had an exception to an exclusion this court found it provides coverage and then when the argument was made that a more general exclusion it was the wear and tear exclusion negates that coverage that was specifically granted this court said no the specific controls over the general and the same logic follows here. Stolberg doesn't address this issue because that court found the two exclusions could coexist so there was no conflict to resolve. In contrast here if exception two in fact provides coverage as we contend it does that is in direct conflict with an exclusion that negates that coverage. Let me just ask a general policy question if we want to push insurance contracts in the direction of being more standard more easier to follow in light of expectations why isn't it a good presumption to say that if you're looking for coverage you look in the coverage terms and you generally don't look for coverage in the limitations or exclusions? Your Honor no Massachusetts case has created such a presumption and the reason I think it's not a good rule is because you have to look at a policy as a whole and this case is a perfect example. This is an endorsement with the word limitation in it but 15 other endorsements with the words exclusion in it. That difference has to mean something and General Starr in the district court below or here has given us no reason for that distinction. In addition that a presumption would not make sense here because the result General Starr wants it's specified specifically in the terrorism exclusion. Why was it not done here? No answer. And then finally the exchange you had Your Honor with General Starr's counsel I think is very interesting. She ended up saying coverage will be available means the exception will be available. She agreed with your suggestion there. Well if that's what that language means why didn't General Starr say that? Why did they say coverage will be available? No explanation for that. And then the last thing I want to get at is this idea of if this is a standard policy or not. General Starr was very careful with the words they chose. They said this is not a manuscript policy but there's no evidence in the record they haven't pointed to any that this is a standard form. There's no example of other organizations using it. There's no case that discusses this specific endorsement. And with respect to Utica's roles objective expectation and everything else I think at a minimum given the complexities here the policy is ambiguous and that can be flushed out in the district court through discovery. And particularly in a case like this where even General Starr's counsel says this is a fairly complex endorsement. So I think at a minimum if the court should remand to let these issues get flushed out with the appropriate discovery including expert testimony on what's reasonable, what's a general form, what's a manuscript form and how all of those concepts apply here. Thank you. Thank you counsel. That concludes argument in this case. Attorney Ahmed and Attorney Duffield you should disconnect from the hearing at this time.